In re the MARRIAGE OF Karen
J. HARRIS and Wendell
Duane Harris.

Karen J. HARRIS, Petitioner–Appellant,

v.

Wendell Duane HARRIS, Respondent–
Respondent.

No. 19702.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 13, 1995.

diploma and thirty hours of college credits, worked continuously throughout the marriage. Her jobs consisted of secretarial positions with attorneys, doctors and architects, including the years during which Husband finished his undergraduate degree and later obtained his master's in music. Wife testified that while she also would have liked to go back to school, she was unable to do so because of her family responsibilities.

After obtaining his master's degree, Husband was employed by Wayland Baptist University in Texas, eventually becoming the chairman of the music department, earning between $30,000 and "the upper thirty thousands."[2] Approximately eight years prior to trial, Husband quit the job at Wayland without explanation, and the family moved to Missouri where they lived in a house owned by Husband's father until their separation.

In Missouri, Husband obtained a job at Crowder College in the music department, but quit that job two years prior to trial, saying only that he was dissatisfied. He then obtained a job at Eagle–Picher Industries in Joplin where he was continuing to work at the time of trial.

Andrew Wood, Sims, Johnson, Wood & Higdon, Neosho, for petitioner-appellant.

Phillip A. Glades, Anita K. Oakes, Phillip A. Glades, P.C., Joplin, for respondent.

GARRISON, Judge.

This is an appeal by Karen J. Harris (Wife) from a decree dissolving her marriage to Wendell Duane Harris (Husband). She contends that the trial court erred in setting the amount of monthly maintenance awarded to her and in limiting those payments to a non-modifiable period of twenty-six months.

The parties had been married for more than thirty years at the time of trial. With the exception of short periods when their sons were born,[1] Wife, who has a high school

Wife was informed by third parties after Husband quit his job at Crowder College that he was having an affair with one of the students who was also a secretary. Following this discovery, the parties attempted to reconcile but Wife later learned that the affair was continuing. They eventually separated for the final time in August, 1993, and Wife instituted this dissolution action. At the time of trial Wife was employed as a bookkeeper for Terminix International.

The trial court, in its decree, ordered Husband to pay Wife maintenance in the amount of $400 per month beginning on July 15, 1994. The court also ordered, however, that the maintenance award was non-modifiable and that it would automatically terminate on August 15, 1996. Wife then filed the instant appeal.

1. Both sons were emancipated at the time of trial.

2. Wife testified that he was earning in the "high thirties," while Husband testified it was $30,000 per year.

■ Our review of this case is pursuant to Rule 73.01[3] as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will sustain the trial court's decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32. In making our review, the evidence is viewed in the light most favorable to the decree. *In re Marriage of Lawry*, 883 S.W.2d 84, 86–87 (Mo. App.S.D.1994).

■ In her first point relied on, Wife challenges the amount of maintenance awarded to her. She contends that under the circumstances of this case the trial court abused its discretion in awarding her $400 per month instead of $750 per month which she requested.

■ The award of maintenance is governed by § 452.335.2 which requires that, in setting the amount of maintenance, the trial court consider all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently....

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

The trial court has broad discretion in setting the amount of maintenance, and we review such awards only for an abuse of that discretion. *Jung v. Jung*, 886 S.W.2d 737, 740 (Mo.App.E.D.1994).

■ There was no dispute that Wife's net monthly income was $678. Her monthly expenses, not including those for housing, totalled $640.[4] At the time of trial, Wife was living with her sister and seventeen-year-old nephew because Husband had asked her to move out of the family residence owned by his father, and she could not afford housing of her own. Wife's testimony was undisputed that rent for a place of her own would cost $400–$450 per month, and that utilities and telephone service would cost an additional $250 per month. This would result in total monthly expenses of at least $1290, which is $612 more than her current income.[5]

Two of the factors to be considered in setting the amount of maintenance are the comparative earning capacities of each spouse and the ability of the spouse from whom maintenance is sought to meet his own needs while meeting those of the spouse

3. All references to rules are to Missouri Rules of Civil Procedure (1994), and all references to statutes are to RSMo 1994.

4. Wife additionally was paying $32 per month for storage of her household furnishings.

5. The net value of the marital property distributed to Wife was $26,434, while $26,950 was set aside to Husband. The only liquid marital property set aside to Wife consisted of a $100 checking account and $3,000 savings account. Additionally, she received five shares of stock valued at $120 and one-half of Husband's retirement plan with the Southern Baptist Convention valued at $16,650. The record before us does not indicate whether the stock was marketable or when and under what circumstances she might receive benefits from the retirement plan. She also received a $3,000 judgment against Husband to equalize the distribution of marital property. In any event, a spouse is not required to deplete the marital property awarded to her before being entitled to maintenance. *In re Marriage of Lawry*, 883 S.W.2d at 89.

seeking maintenance. § 452.335.2(3) and (8). Husband contended that Wife could secure a secretarial job with a professional such as an attorney earning approximately $1600 per year more than her existing income, but there was no evidence that such jobs were available or that they would include benefits comparable to her existing job.

In the instant case, the evidence indicated that Husband's gross income for the prior year was $29,954.81. This is consistent with the trial court's finding that he grossed approximately $2500 per month. The trial court also found that Husband had a monthly net income of approximately $1900 to $2000, which was at least $1222 greater than Wife's.

The amount and nature of Husband's monthly expenses are somewhat nebulous, however. Included in the record before us is a monthly income and expense statement apparently prepared by Husband seven months prior to trial and attached to his answers to interrogatories. It demonstrates monthly expenses of $2350, including $425 for rent to his father, which he had never paid and which the trial court found was doubtful since his brother had earlier lived in the house rent free;[6] $265 in expenses for food, recreation and barbershops for his son who had recently graduated from college and was living with him until he could find a job; $510 for his son's apartment and utilities, an expense which was no longer valid; $150 for his son's car insurance and gas; and $200 to Husband's father for an alleged $58,000 debt, most of which was for back rent, which the trial court found did not exist. By excluding these items, Husband's monthly expenses would be $800, at least $1100 less than his net income.

Husband also presented another income and expense statement at trial which apparently contained information which varied from the earlier statement. While the more recent statement was introduced in evidence, a copy is not filed with this court and we are left to speculate concerning its exact con-

tents. We gather from the record that in the later income and expense statement the claimed monthly rental payment to his father was decreased from $425 to $150; loan payments were changed from $165 to $125 per month; the amount of payments on installment contracts increased from $50 to $300; church and charitable contributions changed from zero to $100 per month; he increased his food expense from $100 to $160; his clothing expense was shown as $100 whereas earlier he had listed none; medical care was increased from zero to $25; and prescription drugs were decreased from $75 to $70. Beyond that, we have no information about the expenses of Husband as of the time of trial. Assuming that the other entries were the same on both the earlier and later statements, Husband's evidence of his monthly expenses at the time of trial would have been $490 greater than those reflected in the earlier statement, without considering rent to his father which the trial court obviously did not believe. This would result in his net monthly income being $610 greater than his monthly expenses and would indicate an ability to pay some maintenance in excess of the $400 awarded by the trial court.

■ We are permitted to find that judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *In re Marriage of Vinson*, 839 S.W.2d 38, 43 (Mo.App.S.D.1992). Because the record before us is not complete concerning the expenses claimed by Husband as of the time of trial, however, we are unable to say that the above analysis indicating more disposable income is accurate. We are, therefore, unable to conclude that the trial court abused its discretion in setting the amount of maintenance. Wife's first point is denied.

■ In Wife's second point relied on, she contends that the trial court erred in declar-

---

6. The parties had never paid rent to Husband's father during the time they lived in the house and, according to Wife's testimony, it had never been discussed.

ing that the maintenance award was limited to the non-modifiable period of twenty-six monthly payments, after which it would automatically terminate. Under the circumstances of this case, we agree.

The trial court has broad discretion in setting not only the amount but also the duration of a maintenance award. *Carter v. Carter,* 901 S.W.2d 906, 909 (Mo.App.E.D.1995). That discretion is not unlimited, however. Limiting the duration of maintenance is justified only where there is substantial evidence of an impending change of the financial condition of the parties. *Id. See also In re Marriage of Myers,* 879 S.W.2d 736, 737 (Mo.App.S.D.1994); *Tillock v. Tillock,* 877 S.W.2d 161, 162 (Mo.App.E.D.1994); *Stottlemyre v. Stottlemyre,* 877 S.W.2d 176, 177 (Mo.App.W.D.1994); *Test v. Test,* 872 S.W.2d 620, 623 (Mo.App.W.D.1994); *Hicks v. Hicks,* 859 S.W.2d 842, 846–47 (Mo.App. W.D.1993); *Thompson v. Thompson,* 853 S.W.2d 410, 412 (Mo.App.W.D.1993); *In re Marriage of Vinson,* 839 S.W.2d at 43; *In re Marriage of Runez,* 666 S.W.2d 430, 433 (Mo.App.S.D.1983). "Implicit in a limited maintenance award is the conclusion the recipient spouse will be self-supporting at the end of the time period." *Hernandez v. Hernandez,* 872 S.W.2d 161, 163 (Mo.App.W.D. 1994) (quoting *Clark v. Clark,* 801 S.W.2d 95, 97 (Mo.App.E.D.1990)). Awards of limited duration should not be based on speculation as to the future condition of the parties. *Jung v. Jung,* 886 S.W.2d at 741; *Polen v. Polen,* 886 S.W.2d 701, 704 (Mo.App.W.D. 1994). "If there is no evidence of a party's future improvement in financial prospects, no decree of maintenance for a limited duration should be entered; it should be of unlimited duration, the amount of which might be subject to modification if the party's financial condition should improve." *In re Marriage of Runez,* 666 S.W.2d at 433–34. Maintenance of unlimited duration is preferred. *In re Marriage of Myers,* 879 S.W.2d at 737–38.

In the instant case, there was no substantial evidence that Wife's condition would likely change appreciably in the next twenty-six months or that she would be self-supporting at the end of that time. At the time of trial she was fifty-two years old without a college degree. Additionally, she had experienced health problems requiring surgery which was apparently paid by health insurance which she carried through her existing employment. While she had previously worked as a professional secretary which she indicated might pay $1500 per year more than she was then earning, there was no evidence that she could obtain such a job in the foreseeable future or that health insurance without exclusions for any pre-existing conditions would be available. The speculative basis for the limited maintenance award in the instant case is exemplified by Husband's testimony as follows:

Q. Other than the fact that you don't have it, do you think she's entitled to maintenance?

A. No, I do not.

Q. Why is that?

A. She has a job. She has a car; has a place to live. Times will get better for all of us, we hope.

Q. In your estimation, how will times get better for Karen?

A. It would be speculating for me to say.

Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of circumstances, a maintenance order providing that it is non-modifiable must be justified by the facts and circumstances. *In re Marriage of Lawry,* 883 S.W.2d at 90. Where future events which may be pertinent to the issue of maintenance are uncertain, such an award should be modifiable. *Id. See also In re Marriage of Vinson,* 839 S.W.2d at 44.

We hold that the trial court erred in ordering that the maintenance award be non-modifiable and that it terminate on August 15, 1996. The case is remanded to the trial court with directions to enter an amended decree eliminating the automatic termination

of the maintenance award and specifying that it shall be modifiable upon proper pleading and proof. In all other respects, the judgment is affirmed.

MONTGOMERY, P.J., and FLANIGAN, J., concur.