ROY L. RICHTER, Judge
Blanca Parciak ("Wife") appeals and Matthew Parciak ("Husband") cross-appeals from the trial court's judgment of dissolution ("Judgment"), inter alia , dissolving their marriage; awarding Wife non-modifiable maintenance, terminable upon the earliest of a listed event to occur; awarding the parties joint legal and physical custody of their two children; ordering Husband to pay child support; and dividing their property, assets and debt. We affirm in part and reverse and remand in part.
I. Background
Wife and Husband were married on November 8, 1997. They met in the country of Peru, where Wife was a lawyer. Wife entered the United States in 1998. They have two daughters born of the marriage in the years 2000 and 2004. During the marriage, the parties lived at the marital home in Wright City, valued at $350,000 with a mortgage of $63,000. The parties separated on March 15, 2015, and filed for divorce on January 6, 2016.
Husband is employed as a senior vice-president for product and consulting services at MasterCard. He receives compensation in the form of a base salary, a cash bonus, and stock options. The trial court's Form 14 assigned Husband a monthly gross income of $50,037.
Although Wife has a law degree from Peru, she has never practiced law. She cannot practice in the United States without attending law school and passing the bar exam. She previously worked with the Ministry of Foreign Affairs. After moving to Missouri, Wife earned a Master's Degree in Business Administration from Fontbonne University. Wife has only worked full-time for short periods during the 18-year marriage; she worked for a few months at MasterCard as an administrative assistant, but left when she accepted a job at Citibank where she worked in 2002 as a call center representative for a higher salary of $29,000 per year. Wife quit that job after three months as well. Wife has been the primary caretaker of the parties' children since their birth. Speaking English, Spanish, and some Portuguese, Wife occasionally worked part time as a translator during the parties' marriage, but she did not earn enough income to report it for taxes. Wife agrees she still possesses the necessary skills to work as a translator.
During the pendency of the case, Wife started working part-time by forming her own photography business, Blanca Parciak Photography, LLC, around 2015. The company *451 limits itself to photographing horses and high school seniors. The business has not earned a profit and lost $14,126 in 2015. Wife testified that she was not able to do much income producing work during the first year due to her depression from the divorce and her focus on the children. The business was awarded to Wife in the division of property. Wife has post-divorce plans to spend the first year after the divorce trying to establish herself in the industry and, if she is unsuccessful after three years, she would seek additional employment. When questioned about the photography business, Wife initially stated she wasn't sure how profitable it could be. The trial court asked her how long she intended on pursuing the business before determining that it wasn't profitable and Wife answered, "So I would imagine three years, something like that. And then I would have to get another job if it doesn't work." When Wife was asked if she had given any thought to her backup career, she had not thought of anything else since she stated that making sure her children were emotionally stable and caring for the horses combined to make a full-time job. Wife's proposed Form 14 suggested that the court impute minimum wage to her for her gross monthly income, totaling $1,335 monthly.
At trial, Wife sought modifiable maintenance of $12,000 per month and an additional $3,000 per month for the taxes on the maintenance. Husband testified that Wife's reasonable expenses were approximately $7,917 per month. While the divorce was pending, Husband had his paycheck split so that half went to his checking and the other half went into Wife's checking account. Wife would pay the mortgage on the marital home, bills, and other expenses with these funds.
The trial court concluded that Wife lacked sufficient property and did not earn sufficient income to satisfy her reasonable needs, "although she has the education and ability to earn substantially more in the very near future." The court awarded Wife non-modifiable maintenance of $10,000 per month, commencing June 1, 2017, and terminable upon the earliest of the following to occur: the parties' youngest child's graduation from high school, Wife's sale of the Linneman Lane property, or the occurrence of a statutory provision. The parties were awarded joint legal and physical custody of their children and Husband was ordered to pay child support of $918 per month for two children and $519 per month for one child.
The trial court equally divided Husband's 401k savings plan, restricted MasterCard stock, and 2016 net cash bonus between the parties, totaling approximately $945,000 each. Each party received his or her own personal property. Each also was awarded three checking accounts and all credit card debts in their own names. Husband was awarded 100 percent of KAP Sport Horses, LLC, a $130,000-valued business entity which owned two horses primarily used by the parties' oldest daughter and incurs ongoing expenses of approximately $79,000 per year. He was awarded the 2004 Jeep Wrangler, 2012 Kia Optima, and the parties' tractor and four-wheeler. Wife was awarded the marital home and ordered to assume full liability for the mortgage. She also was awarded the 2012 Kia Sorento and 100 percent of her photography business, which was valued at $4,000-$5,000.
Wife requested that Husband pay her attorney's fees. Wife had paid her attorney $3,700 as of the date of trial, but her lawyer estimated her billable time to be $8,537. The trial court ordered both parties to pay their own attorney's fees.
This appeal follows.
*452 II. Discussion
Wife raises two points on appeal. First, she alleges the trial court erred in effectively limiting the duration of her maintenance to five years because there is no evidence in the record of any substantial impending change in Wife's financial circumstances which will allow her to meet her reasonable needs without financial support from Husband.
Second, Wife alleges the trial court erred in ordering Wife to pay her own attorney's fees because the trial court abused its discretion in that it failed to consider the significant difference between the parties' incomes and their financial resources.
In response, Husband first argues that both of Wife's points should be dismissed pursuant to Rule 84.04, and then that the trial court did not err as a matter of law. Husband alleges on cross-appeal that the trial court erred as a matter of law in ordering Husband to quit claim his interest in the marital home to Wife while Husband remained liable on the $63,000 mortgage on the home with Wells Fargo Bank because Section 452.330, RSMo. 2000,[1] requires the trial court to divide all marital debt while entering an equitable division of marital property. Husband contends the trial court failed to fully divide all marital debt, the judgment in its current form is inequitable in that Husband remains liable on the $63,000 mortgage with the bank while being ordered to relinquish his security interest protecting the debt, and the judgment, in its current form, subjects Husband to the risk that Wife might default on the mortgage while retaining the only possessory real property interest and leading the creditor to Husband for the deficiency.
A. Standard of Review
This Court must sustain the trial court's judgment in a dissolution case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976) ; see also Landewee v. Landewee, 515 S.W.3d 691, 694 (Mo. banc 2017). This Court accepts as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregards all evidence and inferences to the contrary. In re Marriage of Hillis, 313 S.W.3d 643, 644 (Mo. banc 2010). "The burden of demonstrating error is on the party challenging the divorce decree." Hernandez v. Hernandez, 249 S.W.3d 885, 888 (Mo. App. W.D. 2008).
B. Maintenance of limited duration and non-modifiable
Wife argues the trial court erred in limiting the duration of her maintenance to no more than five years because there is no evidence of any substantial impending change in her financial circumstances to allow her to meet her reasonable needs without financial support from Husband, that the maintenance-terminating conditions set out by the court are "wholly arbitrary," and that the court should enter a judgment ordering modifiable maintenance. Husband, however, argues that Wife's point does not comply with Rule 84.04(d). Husband contends that the point does not raise issues as to the court's decision to render the maintenance judgment nonmodifiable and thus, that issue is not before this Court. Although the issue of non-modifiable maintenance is not included in Wife's point relied on, we are permitted to make a plain error review of *453 matters affecting substantial rights, which, although not properly preserved for appellate review, may have resulted in a manifest injustice or a miscarriage of justice. Rule 84.13(c); Sertoma Bldg. Corp. v. Johnson, 857 S.W.2d 858, 859 (Mo. App. S.D. 1993). We exercise our discretion to do so concerning this particular issue.
A trial court has broad discretion in determining the duration of maintenance, and we review that decision for abuse of discretion. In re Marriage of McMillian, 399 S.W.3d 838, 840 (Mo. App. E.D. 2013). However, " '[t]here is a judicial preference for awards of maintenance of unlimited duration.' " Underwood v. Underwood, 163 S.W.3d 490, 491-92 (Mo. App. E.D. 2005) (quoting Aurich v. Aurich, 110 S.W.3d 907, 919 (Mo. App. W.D. 2003) ). "The trial court's decision to limit the duration of a maintenance award is warranted only where there is substantial evidence that the financial condition of the parties is subject to an impending change." Id. at 492. "The trial court should not prospectively terminate maintenance if no evidence is presented or no reasonable expectation exists that the circumstances of the parties will be substantially different in the future." Id. Placing a limitation " 'on the duration of a maintenance award based on mere speculation or not supported by sufficient evidence that the parties' circumstances will be markedly different in the future constitutes an abuse of discretion.' " Id. (quoting Lincoln v. Lincoln, 16 S.W.3d 346, 347 (Mo. App. W.D. 2000) ) " 'Neither an appellate court [n]or a trial court may speculate on what the future might justify; rather, such a determination should be made in a proceeding for modification of the award upon a showing of changed circumstances.' " Craig-Garner v. Garner, 77 S.W.3d 34, 39 (Mo. App. E.D. 2002) (quoting Whitworth v. Whitworth, 806 S.W.2d 145, 148 (Mo. App. W.D. 1991) ).
The trial court's judgment added the "non-modifiable" designation to the maintenance order, in accordance with Section 452.335. The statute provides, in pertinent part that the maintenance order:
shall state if it is modifiable or nonmodifiable. The court may order maintenance which includes a termination date. Unless the maintenance order which includes a termination date is nonmodifiable, the court may order the maintenance decreased, increased, terminated, extended, or otherwise modified based upon a substantial and continuing change of circumstances which occurred prior to the termination date of the original order.
As explained by the Southern District in In re Marriage of Lawry, 883 S.W.2d 84, 90 (Mo. App. S.D. 1994), the statute, however, does not grant unfettered discretion on the trial court. "Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of the parties' circumstances, a maintenance order providing that it is "non-modifiable" must be justified by the facts and circumstances of that particular case." Id. (citing Thompson v. Thompson, 853 S.W.2d 410, 413 (Mo. App. W.D. 1993) ; Cohn v. Cohn, 841 S.W.2d 782, 786 (Mo. App. E.D. 1992) ). Because maintenance is based on need, it may extend only as long as the need exists. Cates v. Cates, 819 S.W.2d 731, 735 (Mo. banc 1991). Where future events which may be pertinent to the issues of maintenance are uncertain, such an award should be modifiable. See Harris v. Harris, 784 S.W.2d 630, 631 (Mo. App. W.D. 1990). Thus, although awards of non-modifiable decretal maintenance are permitted under Section 452.335.3, there is a judicial preference for modifiable awards of maintenance of unlimited duration.
*454 Sweet v. Sweet, 154 S.W.3d 499, 509 (Mo. App. W.D. 2005).
Wife argues there is no evidence in the record of an impending change in her financial circumstances that would allow her to meet her reasonable needs on her own. She urges this Court to reverse the trial court's judgment and award Wife with $10,000 per month in modifiable maintenance.
We find instructive our analysis in the case of In re Marriage of McMillian, 399 S.W.3d 838, 841-42 (Mo. App. E.D. 2013), wherein the trial court found in its judgment that it was reasonable to assume that the wife could be "again self-supporting as she was prior to 2009," and awarded maintenance for a determined period of time as statutory, non-modifiable maintenance, and this Court reversed, finding the trial court abused its discretion in limiting the maintenance award to a period of time because no substantial evidence was presented that the wife's financial condition was subject to an impending change that would cause the wife to become self-sufficient in the 36-month time period given. Although wife was a licensed hair stylist and started a salon that became very successful for her to support the family for a number of years during the marriage, at the time of trial, she did not have enough clients to rent a salon station more than three days a week. Id. at 841. Her only other work experience was part-time, minimum-wage work for a period of six months. Id. There was no evidence that would support a reasonable expectation that wife would attract a sufficient number of clients to make her self-supporting in three years. Id. This Court stated that "[t]he fact that she ran a salon in the past that was at one time successful does not reasonably lead to the conclusion that she will have similar success in the future, given that her former salon failed, and at the time of trial, she could not attract enough clients to warrant renting a station for more than three days a week." Id."The prospect that her clientele would sufficiently increase in three years to make her self-supporting is purely speculative." Id. The Court also noted that there was no evidence adduced that the husband's income would dramatically decrease after three years. Id.
Where the evidence indicates that the dependent spouse's financial prospects will not improve materially in the future and that the means of the spouse providing maintenance are not likely to decrease substantially, the trial court abuses its discretion when it speculates that the original maintenance award will no longer be required in the future.
In re Marriage of Thomas, 829 S.W.2d 491, 494 (Mo. App. E.D. 1992).
Just as in McMillian, we find the trial court abused its discretion in limiting Wife's maintenance award to certain events without evidence that those events would allow Wife to support herself: the sale of the marital home or the high school graduation of her youngest child. See Underwood v. Underwood, 163 S.W.3d 490, 492 (Mo. App. E.D. 2005) ; see also Friedman v. Friedman, 965 S.W.2d 319, 325 (Mo. App. E.D. 1998) (although the wife had an equivalent of a doctorate in music, she had not obtained full-time, permanent employment as of the time of trial, and there was no evidence of a specific job that awaited her); In re Marriage of Myers, 879 S.W.2d 736, 738 (Mo. App. S.D. 1994) (although the wife had a college degree and teaching certificate, there was no evidence that she would find employment in a year); Tillock v. Tillock, 877 S.W.2d 161, 163 (Mo. App. E.D. 1994) (although the wife was scheduled to receive a master's degree in a year, full-time employment upon graduation was a goal, not a likelihood). Here, *455 there was evidence on the record that Wife intended to sell the marital home, which would then pay off the mortgage.[2] Additionally, Husband agreed to pay for the children's college, thus easing the financial burden on Wife when the children graduated from high school. However, even the financial gain from these events do not allow Wife to meet her reasonable expenses, which according to Husband, were approximately $7,917 per month. Since the limitation on the duration of maintenance must be reversed, the order making the maintenance non-modifiable must also be reversed. "Just as an order terminating maintenance at a definite date in the future must be supported by substantial evidence of an impending change of circumstances, a maintenance order providing that it is non-modifiable must be justified by the facts and circumstances." In re Marriage of Harris, 908 S.W.2d 854, 859 (Mo. App. S.D. 1995).
The trial court may give a spouse a reasonable time period in which to find employment, but there was no evidence in the record that Wife's financial needs will remain the same if Wife's photography business begins to gain success or if Wife finds other employment. When future events that may be pertinent to the issue of maintenance are uncertain, a maintenance award should be modifiable. Id. A modifiable award would allow Husband to seek a modification of the award if Wife becomes self-sufficient at some future point in time. See Howard v. Howard, 764 S.W.2d 169, 171 (Mo. App. 1989). We find the judgment for non-modifiable maintenance is a manifest injustice or a miscarriage of justice, and we reverse and remand for the trial court to enter an order for modifiable maintenance. Rule 84.13(c).
C. Attorney's Fees
In her second point, Wife argues the trial court abused its discretion in ordering Wife to pay her own attorney's fees because the trial court failed to consider the significant difference between the parties' incomes and their financial resources. Husband again claims Wife is in violation of Rule 84.04(d) in failing to set out, in her point relied on, the evidence with which would support an award of attorney's fees, which is required when an appellant is making a claim of insufficient evidence in a point relied on. We deny Husband's request to dismiss Wife's point.
A trial court has broad discretion in awarding attorney's fees; such an award is only reviewable for an abuse of discretion. In re Marriage of Lindeman, 140 S.W.3d 266, 279 (Mo. App. S.D. 2004). A trial court abuses its discretion when an award is clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. Id. The requesting party bears the burden of proving his or her entitlement to such an award. Wagner v. Wagner, 542 S.W.3d 334, 343 (Mo. App. E.D. 2017).
"Missouri courts generally follow the 'American Rule,' which provides that each party should bear his or her own litigation expenses." Wansing v. Wansing, 277 S.W.3d 760, 770 (Mo. App. S.D. 2009). However, Section 452.355.1 provides that a trial court may order a party to pay a reasonable amount for the cost of the other party of maintaining or defending a divorce proceeding and for attorney's fees, after considering all relevant factors, including the financial resources of both parties, the merits of the case and the actions *456 of the parties during the pendency of the case. "With that being said, '[t]he trial court is not limited to considering the financial resources of the parties in awarding attorney's fees, but may consider all relevant factors.' " Wansing, 277 S.W.3d at 770 (quoting In re Fuldner, 41 S.W.3d 581, 596 (Mo. App. S.D. 2001) ). "In awarding attorney's fees, the trial court is considered an expert in necessity, reasonableness, and value of the legal services." Fuldner, 41 S.W.3d at 596. Although "one spouse's greater ability to pay is sufficient to support an award of attorney's fees," Lindeman, 140 S.W.3d at 279, it is not the only factor. Wansing, 277 S.W.3d at 770.
Here, the trial court considered that Wife paid her attorney $3,700 before trial, had a balance due of $4,837.50, and had an additional three to four hours for the hearing. The trial court heard testimony that during the pendency of the case, Husband had been depositing half of his paychecks into Wife's bank account and the other half into his own account. Wife used that money to pay the bills for her home and one of the daughter's school tuition, while Husband paid the bills for his home and the other daughter's tuition. Wife argues only the disparity in the parties' incomes as her reason for the court's abuse of discretion. We find that Wife has failed to prove her entitlement to an award of attorney's fees based on the court's abuse of discretion standard. Point denied.
D. Husband's liability to bank for mortgage while Wife retains marital home
Finally, on cross-appeal, Husband alleges the trial court erred as a matter of law in ordering Husband to quit claim his interest in the marital home to Wife while Husband remained liable on the $63,000 mortgage on the home with Wells Fargo Bank because Section 452.330, requires the trial court to divide all marital debt while entering an equitable division of marital property. Husband argues the trial court failed to fully divide all marital debt, the judgment in its current form is inequitable in that Husband remains liable on the mortgage with the bank while being ordered to relinquish his security interest protecting the debt, and the judgment, in its current form, subjects Husband to the risk that Wife might default on the mortgage while retaining the only possessory real property interest and leading the creditor to Husband for the deficiency.
"The trial court has broad discretion in identifying, valuing, and dividing marital property." Alabach v. Alabach, 478 S.W.3d 511, 513 (Mo. App. E.D. 2015). This Court will interfere with the trial court's distribution of marital property only if the division is so heavily weighted in favor of one party as to amount to an abuse of discretion. Rallo v. Rallo, 477 S.W.3d 29, 38 (Mo. App. E.D. 2015).
The trial court's judgment found that the parties own a tract of real estate with the marital home located in Wright City, valued at $350,000; the mortgage on the property is $63,000, thus having marital equity of $287,000. Wife testified that she would receive the property and be liable for the mortgage, and that she plans to sell it and move to another location. The trial court's judgment stated, "[Wife] shall be liable for the mortgage of approximately $63,000 with Wells Fargo on the marital home and hold [Husband] harmless. [Husband] shall execute and return to [Wife], within 10 days of receiving, a Quit Claim deed conveying his interest in the property to [Wife]. [Wife] shall be responsible for the preparation and recording of the Quit Claim deed."
"In Missouri, a conveyance of real property to a husband and wife as co-grantees is presumed to create a tenancy *457 by the entirety if there are no limiting words in the operative clauses of the deed." Ronollo v. Jacobs, 775 S.W.2d 121, 123 (Mo. banc 1989). In a tenancy by entirety, "[e]ach spouse is seized of the whole or entirety and not a share, moiety or divisible party. Thus, neither spouse owns an undivided half interest in entirety property; the whole entirety estate is vested and held in each spouse and the whole continues in the survivor." Id. (internal citation omitted). Given the distinctive characteristic of a tenancy by the entirety such that the estate is deemed owned by a single entity, " 'neither spouse has any right, title or interest which may be conveyed, encumbered or devised by his or her sole act....' " Bakewell v. Breitenstein, 396 S.W.3d 406, 412 (Mo. App. W.D. 2013) (internal citations omitted).
"It has long been recognized that '[t]he divorce of tenants by the entirety destroys the tenancy and converts it into a tenancy in common.' " Ronollo, 775 S.W.2d at 123 (citing Allan v. Allan, 364 S.W.2d 578, 582 (Mo. 1963) ). This effect is automatic, notwithstanding the absence of a mutually executed conveyance document. Jones v. Jones, 325 Mo. 1037, 30 S.W.2d 49, 55 (Mo. 1930). Additionally, our Supreme Court has held that Section 452.330.1's division of marital property and debts may be accomplished with respect to real estate either by including language in a decree sufficient to convey title without further action by the parties, or by ordering spouses to execute deeds of conveyance subject to enforcement by a "supplemental order decreeing the transfer of title or ... by contempt." Bakewell, 396 S.W.3d at 413 (citing DeWitt v. Am. Family Mut. Ins. Co., 667 S.W.2d 700, 706 (Mo. banc 1984) ). In recognition of the fact that a decree can independently operate to effect legal transfer of title to real estate, Section 452.330.6 provides that "[a] certified copy of any decree of court affecting title to real estate may be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situated by the clerk of the court in which the decree was made." Id.
Clearly, the trial court's judgment divesting Husband of the marital property in favor of Wife is sufficient, especially with an additional quit claim deed to convey the property to Wife. Whether the trial court was then required to order a change to the mortgage is the remaining issue to be determined in our analysis.
Section 452.330 requires a just and equitable division of marital property in light of the individual circumstances of the case. "We presume the correctness of the order prescribing the division." Vehlewald v. Vehlewald, 853 S.W.2d 944, 949 (Mo. App. E.D. 1993). Although marital debts are not marital property, the existence of such debts, and who bears responsibility for them, is a factor for the trial court to consider in dividing the marital property. Id. at 950. The trial court possesses the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same. Cross v. Cross, 30 S.W.3d 233, 236 (Mo.App. E.D. 2000) ; Hileman v. Hileman, 909 S.W.2d 675, 681 (Mo. App. E.D. 1995) (citing Harry v. Harry, 745 S.W.2d 824, 826 (Mo. App. E.D. 1988) ). However, the trial court is under no duty to distribute the marital debts. Harry, 745 S.W.2d at 826. The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude its allocation to that spouse where it is determined to be a marital debt. Cross, 30 S.W.3d at 236.
Wife cites Davis v. Davis, 50 S.W.3d 308, 311 (Mo. App. E.D. 2001), in *458 support of the trial court's judgment because, on appeal, the Court found the trial court's dissolution judgment unreasonable and unfair where it ordered Wife to refinance the mortgage on rental property prior to awarding her the property, but there was no reciprocal requirement for the husband to refinance the marital residence in his name solely and remove the wife from any liability. The Court found no evidence that the wife had a history of defaulting on debts but instead that she successfully managed the family finances for the majority of the marriage. Id. We find Davis distinguishable from the case at bar without any reciprocal refinancing requirements on property here and instead, find our holding in Harry to be directly on point. 745 S.W.2d at 826. In Harry, the wife, similarly to the case here, complained about a possible default by the husband on a $26,000 note on which he was primarily liable and she might become obligated. This Court held, "[w]e, however, have no obligation to render an advisory opinion based on a hypothetical situation." Id. See also Williams v. Williams, 349 S.W.2d 422 (Mo. App. 1961) ; Warren v. Warren, 601 S.W.2d 683, 687 (Mo. App. W.D. 1980) ; Butler v. Butler, 698 S.W.2d 545, 549 (Mo. App. E.D. 1985) (A court has no general equitable poser to require a husband in a dissolution proceeding to post a bond to guarantee his payment of future maintenance and child support). Whereas Wife's default and Husband's liability to the bank are mere hypotheticals, Husband's cross-appeal is denied.
Although we need not interfere with the trial court's judgment dividing the parties' marital property and debt, we note that as a practical matter, a court order to refinance the mortgage may present some potential problems. The mortgage lender likely is not interested in releasing the spouse with the large income from liability, and likewise, the spouse retaining the home but with much less (or even negative) income may not qualify to refinance the home even if she tried. Perhaps, if these problems are likely to occur, a sale of the home may be a necessary resolution.
III. Conclusion
We affirm in part and reverse and remand the case to the trial court with directions that the trial court enter the maintenance award as modifiable maintenance.
Lisa P. Page, P.J., concurs.
Philip M. Hess, J., concurs.

Unless otherwise indicated, all statutory references are to RSMo. 2000 as updated.

The sale of the family home would allow Wife to pay off the $63,000 mortgage and end monthly payments of $735.