

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| AIG AGENCY, INC., | ) | No. ED102096 |
| d/b/a ASSOCIATED INSURANCE GROUP, | ) | |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 12SL-CC01281 |
| | ) | |
| MISSOURI GENERAL INSURANCE | ) | Honorable Michael T. Jamison |
| AGENCY, INC., JIM BAXENDALE AND | ) | |
| MITCH O'BRIEN, | ) | |
| | ) | |
| Respondents. | ) | Filed:  November 3, 3015 |

AIG Agency, Inc., d/b/a Associated Insurance Group ("AIG") appeals the trial court's

grant of summary judgment in favor of Missouri General Insurance Agency, Inc. ("Missouri

General"), Jim Baxendale, and Mitch O'Brien (collectively "Respondents") on AIG's claims

arising from the transfer of insurance agent Martin Tessler's relationship with Missouri General

to AIG.  We affirm in part and reverse and remand in part.

## I.     BACKGROUND

Tessler began working with Missouri General in 1988.  Missouri General provided office

space, equipment, bookkeeping, marketing services, and mail service in exchange for Tessler's

agreement to place all of his insurance sales (his "book of business") through Missouri General,

sharing the commissions Tessler earned on his book of business.  The contract governing the

arrangement (the "Producer Agreement") specified, "[a]ll insurance business, accounts, records,

and files produced by [Tessler] are the sole and exclusive property of [Tessler] and [Missouri General] shall not, by virtue of this Agreement, acquire any right, title or interest in such business."

The Producer Agreement specified its term would continue indefinitely until terminated by either party. However, it also specified that "certain obligations contained in this [Producer] Agreement shall by their very terms survive the termination of this [Producer] Agreement." It did not specify which obligations would endure. Finally, the Producer Agreement contained a non-assignment clause, which stated "[t]his agreement shall not be assignable by [Missouri General] or [Tessler]."

On December 31, 2010, Tessler left Missouri General to become an agent with AIG. Tessler entered into an Independent Contractor and Asset Purchase Agreement with AIG on that day and terminated the Producer Agreement with Missouri General. Tessler and his office assistant moved to AIG's offices and began servicing clients there starting January 1, 2011.

Although Tessler serviced all but one[1] of his accounts from AIG's offices, Missouri General was still the agency of record listed on each client's account. It is undisputed that this arrangement is typical in the insurance industry because for an insurer to change the agency of record in the middle of the policy period, it would have to cancel the policy and reissue a new policy, leading to higher costs and duplicative paperwork. Therefore, typically agencies instead send transfer letters to the insurers when an agent moves his book of business, leaving the original agency as the agency of record until the policy renews, at which point it is rewritten with the new agency as the agency of record. Because Missouri General was still the agency of record, Tessler would occasionally forward paperwork he prepared for policy changes to Missouri General, which then forwarded that paperwork to the insurer. Missouri General billed

---

[1] The exception account is discussed below.

Tessler for its mail costs associated with this paperwork. It is in dispute in such an arrangement to whom commissions are owed.

The one account Tessler did not continue servicing after he left Missouri General involved a real estate business, Woodson Development (the "Woodson account"). Baxendale, president of Missouri General, was also an owner of the Woodson account. Thomas Lane, president of Woodson Development, dealt primarily with Baxendale or his assistant regarding the account. The parties dispute whether Baxendale told Lane the Woodson account could not move to AIG due to a non-compete provision for Tessler in the Producer Agreement.

When Tessler terminated the Producer Agreement with Missouri General and the Woodson account was not transferred to AIG, Tessler and Gregory Wherry, AIG's president, communicated with Lane to discuss moving the account to AIG. Lane testified at his deposition that he did not recall anyone ever telling him Tessler had a non-compete provision in his contract with Missouri General, or that Lane was not free to move his business to AIG if he so chose. Wherry testified to the contrary – that Lane told Wherry over the phone that Baxendale told Lane the Woodson account could not be moved to AIG due to Tessler's non-compete provision. Lane also testified he did not consider moving the Woodson account to AIG because he had not done any due diligence on AIG at the time of AIG's attempt to win the account, and that he never received a specific proposal from AIG with respect to the Woodson account.

After December 31, 2010, although Missouri General was not actively servicing Tessler's accounts (except the Woodson account), it retained all the commissions it received from insurance companies on Tessler's accounts for which it was the agency of record. As a result, AIG filed this instant lawsuit against Respondents. Count I claimed breach of contract for Missouri General retaining the commissions it received on Tessler's accounts. Though Missouri

3

General and AIG did not have a contractual relationship, AIG alleged it acquired Tessler's contract rights under the Producer Agreement. Count II claimed tortious interference based on Missouri General's alleged representations to Woodson Development that it could not move the Woodson account to AIG due to a non-compete provision in Tessler's contract with Missouri General. Count III alleged unjust enrichment based on the retained commissions, and Count IV alleged conversion for the same.

Respondents filed a motion for summary judgment on all counts, which the trial court granted. Regarding AIG's breach of contract claim, the trial court held Tessler's attempt to assign his contract rights to AIG was ineffective as a matter of law, Tessler could not assign a future cause of action for breach of contract, and in the alternative, Missouri General did not breach its contractual obligations as a matter of law. On the unjust enrichment and conversion claims, the trial court found Missouri General's retention of the commissions was proper as a matter of law. For the tortious interference claim, the trial court found Missouri General did not interfere with AIG's business expectancy because, (1) Lane did not recall any representations from Missouri General regarding Tessler's non-compete clause; (2) Lane had an unrelated business rationale for deciding to keep the Woodson account with Missouri General; and (3) Missouri General was justified in any alleged interference as a matter of law because it had an ownership interest in the Woodson account. This appeal followed.

## II. DISCUSSION

AIG brings four points on appeal. In its first and second points, AIG asserts the trial court erred in granting Respondents' motion for summary judgment on AIG's breach of contract claim. In its third point, AIG contends the trial court erred in finding Respondents were entitled to summary judgment on AIG's breach of contract, unjust enrichment, and conversion claims. In

4

its fourth point, AIG claims the trial court erred in granting Respondents' motion for summary judgment on AIG's tortious interference claim.

## A.    Standard of review

Summary judgment is reviewed essentially de novo and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A defendant may establish summary judgment is appropriate by showing, (1) facts negating any one of the plaintiff's elements necessary for judgment; (2) that the plaintiff has not produced evidence sufficient for the finder of fact to find the existence of one of the plaintiff's elements; or (3) facts necessary to support a properly pleaded affirmative defense. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013). We review the record in the light most favorable to the party against whom judgment was entered. *Id.*

## B.    Breach of contract claim

AIG's first and second points on appeal are closely related in that they both assert the trial court erred in granting summary judgment on AIG's breach of contract claim. As such, we address them together. In its first point on appeal, AIG asserts the trial court erred in granting summary judgment on AIG's breach of contract claim because Tessler's sale of his book of business was ineffective as a matter of law. Specifically, AIG claims Tessler had the right to transfer his property as he saw fit, and the Producer Agreement's non-assignment clause only governed the parties' rights and duties under the contract, not the book of business itself. In its second, related point on appeal, AIG asserts the trial court erred in granting summary judgment on AIG's breach of contract claim on the grounds that Missouri law does not allow for the transfer of potential future causes of action. AIG argues Tessler should have been allowed to

5

transfer potential future causes of action, including for breach of contract, along with the sale of his book of business. For the reasons discussed below, we hold that there are disputed issues of material fact regarding the parties' contractual relationship, preventing summary judgment.

The trial court found the parties did not have a contractual relationship of their own and the Producer Agreement was not assignable, such that Tessler's attempted assignment of his property rights under the contract was ineffective as a matter of law. The Producer Agreement specified "[a]ll insurance business, accounts, records, and files produced by [Tessler] are the sole and exclusive property of [Tessler] and [Missouri General] shall not, by virtue of this Agreement, acquire any right, title or interest in such business." Further, in his deposition, Baxendale testified Tessler "owned the commissions flowing from [the] book of business," and "Missouri General did not own that flow of commission." Essentially, when Tessler and Missouri General executed the Producer Agreement, Tessler agreed by contract to assign a certain percentage of his commissions – a benefit generated by the property interest he owned in the book of business – in exchange for Missouri General's office services. Because the commissions forming the subject matter of the contract flowed from Tessler's ownership of the book of business, when he sold his book of business to AIG, AIG acquired the right to pursue Tessler's contract rights. *See Korte Const. Co. v. Deaconess Manor Ass'n*, 927 S.W.2d 395, 403 (Mo. App. E.D. 1996) (finding an assignment of contract "transferred all past, present and future causes of action arising from the contract").

Missouri General argues that AIG cannot bring a cause of action for contractual rights it received via assignment from Tessler, however, due to the Producer Agreement's explicit non-assignment clause. However, as we discussed in *Korte*, a non-assignment clause does not prevent all contractual assignments in all cases. *Korte* involved a contract with a mandatory

6

arbitration clause and a non-assignment clause between a construction company and two housing developments. *Id*. at 397, 399. The construction company attempted to prevent arbitration, because while a valid arbitration agreement existed between the construction company and predecessor housing development (the "assignor"), the assignor assigned its contractual rights (including the right to compel arbitration) to the subsequent housing development (the "assignee"), in violation of the contract's non-assignment clause. *Id*. at 397, 400.

This Court held the assignment of the contractual rights and the accrued causes of action arising from the contract were valid. *Id*. at 404. In so holding, we applied the so-called *Ocean Accident* doctrine, first appearing in the case *Ocean Accident & Guarantee Corp. v. Southwestern Bell Telephone Co.*, 100 F.2d 441 (8th Cir. 1939), which dictates that even when a contract is non-assignable by its own terms, it may still be validly assigned where the contract is no longer executory vis-à-vis the assigning party. *Korte*, 927 S.W.2d at 401. That is, the assignment is valid where the events creating the liability occur while the contract is still held by the assignor, because the contract rights assigned will not be affected by the personal change in the party. *Id*.

In applying the *Ocean Accident* doctrine to the contract at hand, the *Korte* Court held the contract was no longer executory, because the assignor had completely fulfilled its obligations under the contract at the time of the assignment. *Id*. at 402-03.

In this case, there remain genuine issues of material fact as to whether the Producer Agreement remained executory for Tessler. While the parties terminated the contract before Tessler moved to AIG, the Producer Agreement by its own terms specified "certain obligations contained in this [Producer] Agreement shall by their very terms survive the termination of this [Producer] Agreement." When Tessler made a sale, he would then receive monthly commissions

for the term of the insurance policy – usually one year. Therefore, Tessler made sales during the lifetime of the Producer Agreement that entitled him to commissions flowing after his departure from Missouri General, but the record does not indicate whether he had continuing obligations that entitled him to those proceeds. The parties agree that Tessler performed additional tasks to "service" the accounts after the sale and after his move to AIG, but it is not clear from the record what "servicing" entailed, or more importantly, whether servicing the accounts was necessary to continue to receive commission payments on prior sales. If Tessler was entitled to receive the commission payments for sales he made during the lifetime of the Producer Agreement regardless of his future actions, the contract was no longer executory, and Tessler's contract rights were assignable, regardless of the non-assignment clause.

Further, there remain genuine issues of material fact as to whether Missouri General breached its obligations under the contract. As noted above, the Producer Agreement dictated that certain obligations, by their very nature, would extend beyond the contract's termination, but it does not identify which obligations those are. Further, the Producer Agreement does not address whether Missouri General would be entitled to retain commission payments after Tessler's departure. There is no evidence in the record as to what Tessler and Missouri General's expectations were on this issue at the time they executed the agreement, and there is no evidence of the standard practices within the insurance industry in such situations. As such, genuine issues of material fact remain unresolved as to whether Missouri General breached its obligations. Summary judgment is only appropriate where there are no genuine issues of material fact. *ITT*, 854 S.W.2d at 376.

AIG's second, related point on appeal claims that the trial court erred in granting summary judgment on the breach of contract claim on the grounds Tessler could not assign

8

future causes of action for breach of contract under Missouri law. The trial court found "at the time of the purported assignment, Mr. Tessler had no cause of action for breach of the contract against Missouri General, such that he could not, as a matter of law, assign such a cause of action even if it was otherwise assignable." This finding was in error. Assignment of a contract "transfer[s] all past, present and future causes of action arising from the contract," regardless of whether those causes of action are yet ripe for adjudication. *Korte*, 927 S.W.2d at 403. Therefore, even if the cause of action for breach of contract had not yet accrued for Tessler at the time of the assignment, it was still transferable.

Based on the foregoing, the trial court erred in granting summary judgment on AIG's breach of contract claim. Points one and two are granted.

## C. Unjust enrichment and conversion claims

In its third point on appeal, AIG claims the trial court erred in granting summary judgment on its claims for unjust enrichment and conversion, because the evidence in the record demonstrates outstanding disputes of material fact.[2] Specifically, AIG argues it presented evidence Missouri General wrongfully retained money belonging to AIG and that Missouri General converted property rightfully belonging to AIG. We agree there remain outstanding disputes of material fact.

To establish the elements of an unjust enrichment claim, a plaintiff must show, (1) it conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances that are inequitable or unjust. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010). Similarly, to state a claim for conversion, a plaintiff must show, (1) it was the owner of the property in question or was

---

[2] AIG also claims in this point on appeal that the trial court erred in granting summary judgment on AIG's claims for breach of contract due to outstanding disputes of material fact as to whether Missouri General failed to perform its contractual obligations. We agree, and that discussion is set out in section II.B.

9

otherwise entitled to its possession; (2) the defendant took possession of the property with the intent to exercise control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession. *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 596 (Mo. App. E.D. 2000). A key element of both causes of action, therefore, is which party had a right to the property at issue, and whether the other party withheld the property in violation of that right. This element was the basis for the trial court's grant of summary judgment.

The evidence in the record does not establish whether AIG or Missouri General had a right to receive the insurance agency's portion of the commission payments after the termination of the Producer Agreement. In drafting the Producer Agreement, Missouri General and Tessler seem to have not expressly contemplated this set of circumstances, as the document is silent on the issue of what happens to these payments after Tessler leaves the agency but while Missouri General remains the agency of record on the individual policies.[3]

Missouri General claims the Producer Agreement required it to continue to provide servicing to Tessler's accounts, and since it did so, it performed all of its obligations and was therefore the rightful owner of the commissions. However, the evidence in the record presents conflicting information on this point. While Missouri General remained the agency of record, after December 31, 2010, the record shows Pat Hieneman, Tessler's assistant who moved with him to AIG, performed tasks to "service" the account on Tessler's book of business. She performed this work from AIG's offices on Tessler's behalf. The only limitation to Hieneman's exclusive servicing of the accounts was for a handful of accounts that were written through insurance companies with which AIG did not have active agency contracts. For those accounts, Hieneman had to fill out the servicing requests, and forward those requests to Missouri General,

---

[3] Missouri General did not retain any commissions after each policy's renewal, because once AIG was the agency of record, it began receiving the commissions directly from the clients' insurers.

which would forward the requests on to the companies. However, it is not clear that even this mail forwarding would entitle Missouri General to retain the commissions as the rightful servicer of the account, because it sent Tessler bills at AIG for its mail expenses. If Missouri General were still performing its contractual duties as it claims, it would not be entitled to bill Tessler for mail expenses, as mail service was one of the duties it agreed to provide Tessler in exchange for commissions under the Producer Agreement.

In light of the Producer Agreement's silence on the issue and actions taken by both Missouri General and AIG which they contend rightfully establish themselves as the servicing agency for the commissions in question, genuine issues of material fact remain unresolved as to which party had the right to retain the commissions. As such, the trial court erred in granting summary judgment on AIG's claims for unjust enrichment and conversion. *ITT*, 854 S.W.2d at 376. Point three is granted.

**D.     Tortious interference claim**

In its fourth and final point on appeal, AIG claims the trial court erred in granting summary judgment on its claim for tortious interference on the grounds Missouri General did not interfere with AIG's business expectancy. AIG claims the evidence in the record demonstrates outstanding disputes of material fact on this issue. We disagree.

AIG's tortious interference claim stems from a statement Baxendale, the president of Missouri General, allegedly made to Lane, the president of Woodson Development, that AIG could not assume the Woodson account due to a non-compete clause for Tessler in the Producer Agreement. The parties disagree as to whether Lane recalled Baxendale's alleged statement, whether Lane made inconsistent statements about his recollection, and whether evidence demonstrating the alleged inconsistencies is admissible.

11

To state a claim for tortious interference, a plaintiff must show, (1) a valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) a breach caused by the defendant's intentional interference; (4) absence of justification; and (5) damages. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006). As stated above, summary judgment is appropriate where the defendant produces facts negating any one of the plaintiff's elements necessary for judgment. *Roberts*, 391 S.W.3d at 437. Therefore, the parties' disagreements on the alleged misrepresentation are immaterial if AIG cannot demonstrate the alleged tortious representation caused it damages, as the trial court found Lane had an unrelated business rationale for its decision not to do business with AIG.

In his deposition, Lane gave undisputed testimony that he did not consider moving his account to AIG because he had not done any due diligence on AIG at the time of AIG's attempt to win the account. He also testified that he never received a specific proposal from AIG with respect to the Woodson account. Thus, AIG's alleged damages stemmed from Lane's lack of information on AIG and AIG's failure to submit a specific proposal. Therefore, AIG has presented no evidence to show that it was damaged as a result of any alleged tortious representation, because the undisputed evidence shows Lane would not have moved his business to AIG regardless of the alleged misrepresentation regarding Tessler's non-compete clause. Missouri General has negated an element necessary for judgment, and the trial court did not err in granting summary judgement in its favor. Point four is denied.

## III.   CONCLUSION

The trial court's grant of summary judgment in favor of Respondents on AIG's claims for breach of contract, unjust enrichment, and conversion is reversed and remanded for proceedings

consistent with this opinion.  The trial court's grant of summary judgment in favor Respondents

on AIG's tortious interference claim is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J. and
James M. Dowd, J., concur.

13