**Carol CARSON, Appellant,**

v.

**Dixon CEMETERY, Respondent.**

**No. SD 31128.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 25, 2012.

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

Emily Woodward, Woodward & Joyner, LLC, Rolla, for Appellant.

Kimberly F. Lowe, Lowe & Lowe, LLC, Waynesville, for Respondent.

ROBERT S. BARNEY, Judge.

Carol Carson ("Plaintiff") appeals the "JUDGMENT AND ORDER" of the trial court which granted summary judgment in favor of Dixon Cemetery ("Defendant") and dismissed Plaintiff's petition alleging fraudulent misrepresentation, negligent misrepresentation and negligence *per se* arising from Defendant's sale of grave lots. In her sole point relied on Plaintiff maintains the trial court erred in granting Defendant's motion for summary judgment "because the statute of limitations had not run, in that [Plaintiff's] damages were not capable of ascertainment ..." more than five years before this suit was filed.

The record reveals Defendant is a "non-profit corporation" that "sells grave lots or plots through local funeral homes, which act as the sales agent for [it]." Defendant divides its plots into "half-lots" with each half-lot containing the space for four graves. Single graves are not sold individually. Each half-lot cost $300.00 at the time at issue.

In 1934, the entirety of "Lot 16" of the Veasman Addition in Section Two of Defendant's cemetery was purchased by the family of Samuel Wade. In July of 1991, Michelle Gray ("Mrs. Gray") passed away and the arrangements for her interment were handled by the Long Funeral Home. The Long Funeral Home contacted Defendant and it was represented to the Long Funeral Home by Defendant that the eastern half-lot of Lot 16 was available for purchase. This easternmost half-lot of Lot 16 was then purchased by Mrs. Gray's husband, John Gray ("Mr. Gray"). In exchange for his payment of $300.00, Mr. Gray received a "STATEMENT OF GOODS AND SERVICES SELECTED" from the Long Funeral Home which was dated July 16, 1991. Mr. Gray had Mrs. Gray buried in the northernmost of the four available grave locations in the eastern half-lot of Lot 16.

The record shows four days after the sale of the eastern half-lot of Lot 16 to Mr. Gray, on July 22, 1991, the Long Funeral Home sold the *same* eastern half-lot of Lot

16 to Delmas McDonald, who is the father of Mrs. Gray.[1]

In 2003, a distant relative of Mr. Gray, Ken Carson ("Mr. Carson"), passed away and his arrangements were handled by the Birmingham–Martin Funeral Home. The Birmingham–Martin Funeral Home contacted Defendant who advised the funeral home that "the southernmost two (2) plots in the [easternmost half-lot of Lot 16] were owned by [Mr.] Gray, and were available for sale by transfer to the Carson family." Mr. Carson's wife, Plaintiff, then purchased the two plots from Mr. Gray and received a Quit Claim Deed. This "QUIT-CLAIM DEED," dated March 2, 2004, stated that "in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration ..." Mr. Gray did "REMISE, RELEASE and FOREVER QUITCLAIM" to Plaintiff "[t]wo spaces in the East Half of Lot 16 in Veasman Addition in Section Two in [Defendant's] Cemetery, being the space in which [Mr.] Carson is interred and the adjoining space." Mr. Carson was then buried in the southernmost of the four plots of the eastern half of Lot 16.

Thereafter, the McDonalds commenced litigation in December of 2004 against Plaintiff and Mr. Gray claiming that the McDonalds were the rightful owners of the entirety of the eastern half-lot of Lot 16.[2] That lawsuit resulted in a judgment in 2007 that the McDonalds were, in fact, the owners of the entire eastern half-lot of Lot 16. The trial court also granted Mr. Gray and Plaintiff "the right to disinter the remains of [Mrs. Gray and Mr. Carson] and move them to a suitable location for burial purposes."

On March 26, 2010, Plaintiff then filed her "Petition" in four counts: Count I for fraudulent misrepresentation, Count II for negligent misrepresentation and Counts III and IV for negligence *per se* arising from violation of a statute. Defendant filed a motion to dismiss Plaintiff's petition and alleged Plaintiff's causes of action were barred by the five year statute of limitation set out in section 516.120, in that Plaintiff knew or should have known in January of 2005, when the McDonalds' lawsuit was filed, that there were "possible issues" with the ownership of the eastern half-lot of Lot 16.[3] As Plaintiff did not file her lawsuit until March of 2010, Defendant contended Plaintiff's petition should have been dismissed for violating the statute of limitations.

Defendant then filed a motion for summary judgment in July of 2010 in which it reiterated the same argument as encompassed in its motion to dismiss.[4] Plaintiff responded to this motion for summary judgment by admitting that she was served with the petition in the lawsuit with the McDonalds in 2005, however, she denied all other claims asserted by Defendant. Plaintiff also attached an affidavit in which she averred that "[u]ntil the Circuit Court of Pulaski County issued its Judgment on November 27, 2007, [she] believed [she] was the record owner of ..." the half-lot at issue. In her suggestions in support of her response to Defendant's

---

1. The receipt for this transaction states it was for "[c]emetery lots" and does not specify the location of the lots purchased. However, the "Certificate of Purchase" states the purchase was for "Grave Lot No. E½ 16 Addition Veasman in Section Two...."

2. The McDonalds' petition asserted causes of action for quiet title, ejectment, and trespass.

3. All statutory references are to RSMo 2000.

4. The trial court did not rule on the motion to dismiss apparently because the matter was resolved when the trial court ruled in favor of Defendant in its motion for summary judgment.

motion for summary judgment, Plaintiff argued she "was unable to ascertain that she had been damaged until the Court declared her not to be the record owner [of the half-lot at issue] on November 27, 2007," such that her damages were not ascertainable until that time and it was that date that the five year statute of limitations began to run. While admitting that she "had some idea that wrongful conduct may have occurred after she was served with the McDonald lawsuit and engaged in formal discovery in that case," she adamantly asserted the statute of limitations did not begin to run until November 27, 2007, when the judgment in the McDonald lawsuit was entered.

A hearing was held on Defendant's motion for summary judgment on October 18, 2010. Following argument by counsel for both sides, the trial court took the matter under advisement. On October 25, 2010, the trial court entered its ruling sustaining the motion for summary judgment "and [dismissing Plaintiff's] cause of action." This appeal followed.

■ In her sole point relied on Plaintiff asserts the trial court erred in granting Defendant's motion for summary judgment "because the statute of limitations had not run, in that [Plaintiff's] damages were not capable of ascertainment until judgment was entered on November 27, 2007, declaring [Plaintiff] not to be the owner of the burial plots."

■ A summary judgment can only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6); *Hitchcock v. New Prime, Inc.,* 202 S.W.3d 697, 699 (Mo.App.2006). Appellate review of the denial of a motion for summary judgment is de novo. *Wilson v. Rhodes,* 258 S.W.3d 873, 875 (Mo.App. 2008). Appellate review is based upon the record submitted to the trial court. *Sexton v. Omaha Prop. and Cas. Ins. Co.,* 231 S.W.3d 844, 845 (Mo.App.2007). That record is viewed in the light most favorable to the party against whom judgment was entered, and the nonmoving party is accorded the benefit of all inferences which may reasonably be drawn from the record. *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). In that summary judgment is "an extreme and drastic remedy," we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *Id.* at 377.

The parties are in agreement that section 516.120(5) provides that "[a]n action for relief on the ground of fraud ..." shall be filed "[w]ithin five years" with "the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party...."[5] Section 516.100

---

5. Section 516.120 reads in full as follows:
 Within five years:
 (1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;
 (2) An action upon a liability created by a statute other than a penalty or forfeiture;
 (3) An action for trespass on real estate;
 (4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal proper-

ty, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;
 (5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.
 Additionally, neither party takes issue with the applicability of the remaining provisions of section 516.120 and its provision for a five year statute of limitations arising from Plaintiff's causes of action not sounding in fraud.

sets out that "for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...."

As previously related, the parties in this matter do not dispute that the five-year statute of limitation found in section 516.120 applies in this case. Plaintiff argues, however, that it was not until the judgment was entered in the McDonald lawsuit on November 27, 2007, which determined the McDonalds owned the half-lot at issue, that Plaintiff's causes of action accrued. As she filed the current lawsuit on March 26, 2010, she asserts she was well within the statute's provisions. Defendant, on the other hand, maintains Plaintiff's cause of action accrued and the statute of limitations began to run on the "the day [Plaintiff] learned of [the McDonalds'] claim to ownership of the burial plots ..." such that she "knew or should have known in November of 2003 that the exact same burial plots were 'sold' to two different parties and therefore, [she] was put on notice of the alleged fraud ..." at that time.[6] Defendant further asserts that Plaintiff's causes of action also could be found to have accrued when she was served with the McDonalds' lawsuit on January 22, 2005, such that the statute of limitation "began to run, at the latest, when she retained counsel in January of 2005."

We agree with Plaintiff. "The phrase 'capable of ascertainment' has never been given a precise definition." *Business Men's Assur. Co. of America v. Graham,* 984 S.W.2d 501, 507 (Mo. banc 1999). "It refers to the fact of damage, rather than to the exact amount of damage." *Id.* "It has been construed to mean 'the moment that plaintiff's damages are substantially complete.'" *Id.* (quoting *Lockett v. Owens–Corning Fiberglas,* 808 S.W.2d 902, 907 (Mo.App.1991)).

Prior to November 27, 2007, Plaintiff, while aware there were ownership issues with the eastern half-lot of Lot 16, believed she rightfully owned the half-lot on which her husband was interred. She had a Quit Claim Deed to substantiate her claim of ownership and had extended money to Mr. Gray in exchange for that deed. Had she been declared the owner of the half-lot at issue in the prior McDonald lawsuit she would not have had to bring the current cause of action against Defendant in that it was not until the entry of the November of 2007 judgment that her damages were capable of ascertainment, although the exact amount of her damages remained unknown. *Id.* Whether Plaintiff was damaged or not was speculative until the trial court's judgment was entered in the McDonald lawsuit adjudging that Plaintiff was not the owner of the eastern half-lot of Lot 16 with the apparent, attendant consequence that she had to move the remains of her deceased loved one to another grave plot. Her petition filed in the present matter on March 26, 2010, was within the five year statute of limitations set out in section 516.120. The trial court erred as a matter of law in granting Defendant's motion for summary judgment on the basis that the statute of limitations had run. Plaintiff's point has merit.

---

**6.** In support of this November of 2003 date, Defendant states in its brief that "[Plaintiff] was notified by letter and orally as early as November 2003 ..." of the ownership issue in the half-lot. However, in support of that assertion, it cites to a number of pages within the petition filed by the McDonalds in 2004. This Court fails to find support in that document relating to this cited November of 2003 date.

The judgment of the trial court is reversed and remanded for further proceedings.

BATES and SCOTT, J., concur.