

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| GWEN M. SPICER, | ) | No. ED106563 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Appeal from the Circuit Court |
| STEVEN G. SPICER, and | ) | of St. Louis County |
| DEBRA S. PAULI, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and | ) | Honorable Stanley J. Wallach |
| | ) | |
| JOHN DOE, and | ) | |
| JANE DOE, | ) | |
| | ) | |
| Defendants. | ) | FILED: January 29, 2019 |

## Introduction

Steven G. Spicer ("Spicer") and Debra S. Pauli ("Pauli") appeal from the circuit court's

grant of summary judgment in favor of Gwen M. Spicer ("Wife") on Wife's quiet-title action.

Spicer and Pauli (collectively, "Appellants") raise four points on appeal.[1] In Point One,

Appellants contend that the circuit court erred in granting summary judgment in favor of Wife

because the compulsory counterclaim rule bars Wife's petition. Because Wife's claim against

Appellants was not ascertainable until the judgment granting Wife quiet title was voided, we

---

[1] Although Wife listed John Doe and Jane Doe as defendants in her petition, these two individuals were never named and do not participate in the appeal. Thus, we refer exclusively to Spicer and Pauli.

deny Point One. In Points Two through Four, Appellants argue that the circuit court erred in entering summary judgment because the circuit court failed to consider the defenses of equitable contribution (Point Two), unjust enrichment (Point Three), and promissory estoppel (Point Four). Because Appellants lack standing to assert equitable-contribution and unjust-enrichment claims on behalf of the decedent, Donald N. Spicer ("Husband"), we deny Points Two and Three. Because the summary-judgment record lacks evidence to create a genuine dispute of material fact that Appellants detrimentally relied on Wife's promise to Husband, we deny Point Four. We affirm the circuit court's judgment.

## Factual History

No party disputes the following facts:

Wife married Husband and became Husband's second wife. Husband had three children from his first marriage, two of whom were Spicer and Pauli. During their marriage, Wife and Husband purchased a property at 5367 Southview Hills (the "Property") by General Warranty Deed. The General Warranty Deed identified the grantees as "Donald N. Spicer and Gwen M. Spicer, his wife."

Wife and Husband began having marital difficulties. Wife moved out of the Property. After moving out, Wife did not pay the mortgage, taxes, insurance, or any upkeep for the Property. As a result of the strife between Wife and Husband, Husband created a living trust (the "Trust") naming Appellants as beneficiaries.

In 2007, Husband executed a deed (the "2007 Warranty Deed") to convey his interest in the Property to the Trust, naming himself as the grantor and the Trust as the grantee. Husband named Spicer as successor Trustee to the Trust. Husband did not name Wife in the 2007 Warranty Deed, nor did Wife sign the 2007 Warranty Deed. Husband recorded the 2007

2

Warranty Deed, and died shortly thereafter. At the time of Husband's death, Husband and Wife were still married. Wife received $1700 in monthly pension benefits upon Husband's death.

## Procedural History

The parties involved have compiled over a decade of contentious litigation history. Because the full procedural history of this case has been detailed in previous litigation, we summarize only the relevant portions of that background here.

## I.     Spicer I

Wife filed a quiet-title action ("Spicer I") to claim ownership of the Property following Husband's death. Wife asserted that the Property was a tenancy by the entirety and when Husband died, by operation of law, she remained the sole owner of the Property. Further, Wife argued that the 2007 Warranty Deed was a nullity because she did not join or sign the deed. Wife named only the Trust as the defendant in Spicer I. Wife obtained summary judgment on her quiet-title action: the circuit court declared Wife the fee simple owner of the Property and declared the 2007 Warranty Deed a nullity (the "2008 Judgment").

Appellants subsequently moved to intervene asking the circuit court to set aside the 2008 Judgment. Appellants averred that the circuit court lacked jurisdiction to provide the relief sought by Wife in her petition because Trustee and the Trust beneficiaries were indispensable parties to Wife's claim. The Spicer I circuit court granted the intervention and withdrew its order granting Wife summary judgment on her claim.

Wife appealed from the circuit court's judgment setting aside the 2008 Judgment. For a full procedural history up to the Spicer I appeal, see Spicer v. Donald N. Spicer Revocable Living Tr., Nos. ED93371, ED93529, 2010 WL 2378000, at *1–2 (Mo. App. E.D. June 15, 2010). On appeal, the Trust argued that Husband unilaterally terminated the parties' joint tenancy in the Property by obtaining a mortgage without Wife's consent and by conveying

3

Husband's interest by the 2007 Warranty Deed to the Trust. Id. at *1. The Trust further argued, through Spicer as Trustee, that the Trust was not a legal entity and that Trustee was the legal owner of the Property. Id. at *4. Spicer contended that Trustee and the Trust beneficiaries were necessary parties to any lawsuit involving trust property, and thus the circuit court lacked jurisdiction over the case, and was without authority to enter the 2008 Judgment. Id.

This Court held that the only valid final judgment in Spicer I was the circuit court's entry of summary judgment in Wife's favor. Id. at *3. We further held that the 2008 Judgment bound the Trust beneficiaries. Id. at *4. Specifically, we concluded that the circuit court lost jurisdiction thirty days after entering the 2008 Judgment, thus the subsequent order of the circuit court to set aside its summary judgment was invalid. Id. at *3. We recognized that although Trustee was the proper party to the suit, the Trust failed to argue before the circuit court that it lacked the legal capacity to be sued, and therefore waived any objection to proceeding with the litigation. Id. at *4. Equally as important to the current appeal, we held that all interests related to the Trust were represented in the litigation because Trustee and the Trust beneficiaries were represented by the Trust through the doctrine of virtual representation. Id. We transferred the appeal to the Supreme Court of Missouri. Spicer v. Donald N. Spicer Revocable Living Tr., 336 S.W.3d 466 (Mo. banc 2011).

The Supreme Court held that the initial grant of summary judgment to Wife was final and the circuit court lost jurisdiction over the matter prior to Trustee's attempted post-judgment intervention. Id. at 469–70. Accordingly, the Supreme Court found that all actions occurring after the circuit court's grant of summary judgment lacked jurisdiction. Id. at 470. The Supreme Court did not address the issue of virtual representation and whether the Trust beneficiaries were bound by the summary judgment. Id. at 472 n.8. Instead, the Supreme Court dismissed the

4

appeal as untimely because Wife filed the notice of appeal more than one year after the 2008 Judgment became final. Id. at 472.[2] At this point, the 2008 Judgment was valid and final and Wife held fee simple title to the Property.

## II.    Spicer II

Appellants, as Trustee and beneficiaries of the Trust, sued Wife seeking to void the 2008 Judgment ("Spicer II"). Wife did not file any counterclaims in Spencer II. Instead, Wife defended against Appellants' claim and pled multiple affirmative defenses to Appellants' petition. Among the affirmative defenses, Wife contended that "[a]s the Eastern District previously held, both [] [T]rustee and the Trust beneficiaries were virtually represented by the Trust, and hence are barred by the 2008 [J]udgment" from raising their claim. After a bench trial, the trial court entered judgment in favor of Wife. Wife held fee simple ownership of the Property.

Spicer and Pauli appealed, arguing that they were necessary and indispensable parties to Wife's quiet-title action, and thus the 2008 Judgment was void because Appellants were neither served nor identified in Wife's Spicer I petition. On appeal, we reversed our prior holding in Spicer I and voided the 2008 Judgment, finding that Appellants were necessary and indispensable parties to the prior litigation. Pauli v. Spicer, 445 S.W.3d 667, 677, 678 (Mo. App. E.D. 2014). However, we noted that Wife "has an adequate remedy at law, which is to initiate another quiet[-]title suit naming the correct parties as defendants." Id. at 676. At this time, we voided Wife's ownership of the Property and the case was treated as if Wife never filed her quiet-title action in Spicer I.

---

[2] The Spicer I appeal holds no precedential value. See Benton House, LLC v. Cook & Younts Ins., Inc., 249 S.W.3d 878, 883 (Mo. App. E.D. 2015) ("The decision of the court of appeals in a case subsequently transferred is of no precedential effect."). We utilize Spicer I solely to establish this case's procedural background and to track both the validity of the 2008 Judgment and the ownership of the Property.

## III.    Spicer III

Following the conclusion of Spicer II, Wife filed the current action to quiet title ("Spicer III"). Wife, in her sole contention, sought the same quiet-title relief as in Spicer I, but in this action Wife named Spicer and Pauli as defendants. Appellants filed a series of motions to dismiss, raising multiple defenses. Specifically, Appellants maintained that the compulsory counterclaim rule barred Wife from bringing Spicer III because Wife was required to assert her claim to quiet title against Appellants in Spicer II. Appellants also raised affirmative defenses of equitable contribution, unjust enrichment, and promissory estoppel.

The circuit court granted summary judgment in favor of Wife, holding that "[b]ecause this is a straightforward case of a surviving spouse's right of title to property acquired in a tenancy by the entirety, the [circuit c]ourt enters judgment in favor of Plaintiff, [Wife] Spicer." The circuit court further denied Appellants' equitable-contribution and unjust-enrichment counterclaims because, as individuals who never had an interest in the Property, Appellants were not entitled to a money judgment based on a claim that Wife failed to contribute to the Property. The circuit court also rejected Appellants' promissory-estoppel claim because the summary-judgment record lacked a written promise involving real estate, Appellants did not allege detrimental reliance on the oral promise, and Wife made no promise to Appellants. The circuit court granted fee simple ownership of the Property to Wife. Spicer and Pauli now appeal.[3]

### Points on Appeal

Appellants raise four points on appeal. The core issue of each point is that the circuit court erred in granting summary judgment in favor of Wife. In Point One, Appellants contend

---

[3] Appellants filed the notice of appeal prior to the judgment becoming final. However, we permit premature filings of notice of appeals under Rule 81.05. Mo. R. Civ. P. Rule 81.05(b) (2017) ("In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal."); Reynolds v. Reynolds, 109 S.W.3d 258, 270 (Mo. App. W.D. 2003). Thus, we may review the merits of Appellants' case.

6

that the compulsory counterclaim rule barred Wife's claim in Spicer III because Wife failed to assert her quiet-title allegation in Spicer II. Appellants also maintain that the summary-judgment record included sufficient evidence to raise a genuine dispute of fact as to the defenses of equitable contribution (Point Two), unjust enrichment (Point Three), and promissory estoppel (Point Four), thereby the record precluded the entry of summary judgment.

## Standard of Review

Our review of the circuit court's grant of summary judgment is de novo. Brentwood Glass Co. v. Pal's Glass Serv., Inc., 499 S.W.3d 296, 300 (Mo. banc 2016) (citing ITT Com. Finance Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is appropriate when there is no genuine dispute about material facts and, under the undisputed facts, the moving party is entitled to judgment as a matter of law." Bishop & Assocs., LLC v. Ameren Corp., 520 S.W.3d 463, 468 (Mo. banc 2017) (internal quotations omitted). "A genuine dispute exists when 'the issue, or dispute, [is] a real and substantial one— one consisting not merely of conjecture, theory[,] and possibilities.'" Brentwood Glass Co., 499 S.W.3d at 300 (quoting ITT Com. Fin. Corp., 854 S.W.2d at 378).

The moving party establishes a right to summary judgment by either (1) demonstrating facts negating any element of the non-moving party's claim; (2) proving that the non-moving party has not and will not produce sufficient evidence to permit "the trier of fact to find the existence of any one of the elements" of the non-moving party's claim; or (3) showing that there is "no genuine dispute" over the facts supporting the moving party's "properly pleaded affirmative defense." Goerlitz v. City of Maryville, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting ITT Com. Fin. Corp., 854 S.W.2d at 381). "Each of these three methods individually establishes the right to judgment as a matter of law." Id. (internal quotations omitted).

7

We review the record in the light most favorable to the party against whom the circuit court entered judgment and accord that party all reasonable inferences drawn therefrom. Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co., 464 S.W.3d 177, 183 (Mo. banc 2015). But we accept as true the facts contained in the moving party's affidavits or otherwise submitted in support of the moving party's motion, unless the non-moving party's response properly contradicts the proffered facts. Goerlitz, 333 S.W.3d at 452–53.

## Discussion

### I.    Point One—Compulsory Counterclaim Rule

Appellants posit that the compulsory counterclaim rule required Wife to raise her current claim to quiet title as a counterclaim against both Appellants and the Trust in Spicer II, and thus, Wife is now barred from pursuing a quiet-title claim in Spicer III.

Rule 55.32(a)[4] codifies the compulsory counterclaim rule:

A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:

(1)    At the time the action was commenced the claim was the subject of another pending action;

(2)    The opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 55.32; or

(3)    The opposing party brought suit for the purpose of obtaining court approval of a settlement when such approval is required by statute.

Because Spicer I, Spicer II, and Spicer III all involve a dispute among the same parties thought to be in privity at the time of the dispute over the same real property, the claims

---

[4] All Rule references are to Mo. R. Civ. P. (2017).

8

unquestionably arise from the same transaction. See Presson v. Presson, 544 S.W.3d 688, 691 (Mo. App. E.D. 2018) (noting that we construe "transaction" as it appears in Rule 55.32 broadly and "[w]hether claims arise from the same transaction depends not so much upon the immediacy of the connection, as upon logical relationship."). Despite this fact, Wife counters that because her quiet-title claim had not yet "matured" at the time Appellants filed Spicer II, she was not required to assert her interest in the Property as a compulsory counterclaim in the Spicer II proceedings. We agree because Wife's current action did not accrue until the 2008 Judgment was voided by our opinion in Spicer II.

Rule 55.32 serves "to discourage separate litigation covering the same subject matter and to require adjudication of such claims in the same action." Id. at 691; see also Hemme v. Bharti, 183 S.W.3d 593, 598 (Mo. banc 2006). "A party's failure to plead a compulsory counterclaim bars the party from having the claim heard." Presson, 544 S.W.3d at 691. Importantly,

> [a]n implicit requisite to the compulsory counterclaim rule is the claim to be asserted as a counterclaim must be "matured" at the time of serving the pleading in the previous case. A counterclaim is matured when the damage resulting therefrom is sustained and capable of ascertainment. "Ascertainment" refers to the fact of damage rather than to the precise amount. Damage is sustained and capable of ascertainment whenever it can be discovered or made known. In all events, a claim accrues . . . when a person has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.

Id. at 692 (internal citations and quotations omitted). The phrase "capable of ascertainment" is often "construed to mean the moment that plaintiff's damages are substantially complete." Carson v. Dixon Cemetery, 357 S.W.3d 288, 292 (Mo. App. S.D. 2012).

A.    Wife's Interest in the Property

There is no dispute that Wife and Husband purchased the Property together. Missouri courts have long presumed that a joint real estate purchase by a husband and wife creates a tenancy by the entirety. See Parciak v. Parciak, 553 S.W.3d 446, 456–57 (Mo. App. E.D. 2018)

9

("In Missouri, a conveyance of real property to a husband and wife as co-grantees is presumed to create a tenancy by the entirety if there are no limiting words[.]"); Estate of King v. Smith, 572 S.W.2d 200, 211 (Mo. App. K.C.D. 1978) ("Tenancy by the entirety can only be created between husband and wife[.]"). Importantly, neither spouse can destroy the tenancy by his or her individual act because "each spouse is seized of the whole or entirety and not a share, moiety or divisible part. Thus, neither spouse owns an undivided half interest in entirety property; the whole entirety estate is vested and held in each spouse[.]" Parciak, 553 S.W.3d at 457. "Because the estate is deemed to be 'owned by a single entity, neither spouse has any . . . interest which may be conveyed, encumbered or devised by his or her sole act.'" Jennings v. Atkinson, 456 S.W.3d 461, 465–66 (Mo. App. W.D. 2014) (quoting Bakewell v. Breitenstein, 396 S.W.3d 406, 412 (Mo. App. W.D. 2013)). "A tenancy by the entirety may be terminated or severed only by joint and mutual action on the part of husband and wife." Id. at 466.

Here, the facts are uncontroverted that Wife neither signed nor agreed to convey any property interest under the 2007 Warranty Deed. Although Husband sought to transfer his interest in the Property to the Trust, his continued marriage to Wife, and the fact that the Property constituted a tenancy by the entirety, precluded Husband from relinquishing his rights in the Property to another. See Ethridge v. TierOne Bank, 226 S.W.3d 127, 132 (Mo. banc 2007) ("A deed by only one of two tenants by the entirety conveys nothing."); Parciak, 553 S.W.3d at 457. The circuit court in Spicer I properly granted ownership of the Property to Wife over the Trust. The inquiry on the current appeal is whether Wife's ownership of the Property supersedes any claim of interest in the Property asserted by Appellants, and whether Wife abandoned her claim of ownership of the Property by not filing a counterclaim asserting said ownership in Spicer II.

10

B.    Wife Not Required to File a Counterclaim in Spicer II

Appellants maintain that, similar to the case in Presson, Wife had notice of Appellants' interest in the Property prior to Wife filing Spicer I, and therefore Wife was required to assert her interest in a counterclaim in Spicer II. We are not persuaded that Presson provides guidance due to its distinguishable facts. See Presson, 544 S.W.3d at 690, 694. Presson concerned a property dispute involving a wife and children. Id. at 690. Specifically, the wife sued the children/appellants following the husband's death for ownership over the disputed property. Id. The appellants agreed with the wife that the probate court should grant title of the disputed property to the wife. Id. Following the probate court's judgment, the appellants filed a suit against the wife for unjust enrichment, claiming they performed services necessary to maintain the property and deserved compensation. Id. We held that because the appellants' damages were ascertainable when their responsive pleadings to the wife's petition were due, the appellants were obligated to file their claims as compulsory counterclaims in the first case. Id. at 694.

Here, unlike the facts in Presson, Trust challenged Wife's ownership of and title to the Property in Spicer I. See id. at 690. Importantly, the Supreme Court of Missouri reaffirmed Wife's full and complete ownership of the Property when it dismissed the appeal in Spicer I and held that the 2008 Judgment was final. We recognize that Wife's Spicer I quiet-title action bound only those parties named in the action. See Erwin v. City of Palmyra, 119 S.W.3d 582, 586 n.3 (Mo. App. E.D. 2003). We also note that Wife was under no obligation to defend her title against all potential claims by other interested parties. When Appellants filed their Spicer II petition, Wife held legal ownership to the Property by virtue of the tenancy by the entirety and properly defended her title to the Property against Appellants by asserting her sole and undivided ownership of the Property as a defense to Appellants' claim. Given the validity of the 2008 Judgment at the time Appellants filed Spicer II, Wife had no claim to assert against Appellants in

11

the form of a counterclaim. Instead, Wife was required only to answer and defend against the claims raised by Appellants' petition, which she did.

The record before us establishes that Wife was not required to file a counterclaim against Appellants in Spicer II. To do so would merely have restated the 2008 Judgment granting Wife fee simple ownership of the Property. Wife suffered no injury from the 2008 Judgment, and therefore lacked any claim regarding the Property. See Rule 55.32. Had Spicer II declared Appellants bound by the 2008 Judgment pronouncing Wife owner of the Property, Wife would have had no legal basis to bring the current cause of action against Appellants. Quite simply, the 2008 Judgment did not give rise to any claim Wife could assert against Appellants. Not until our Court reversed the trial court judgment in Spicer II and voided the 2008 Judgment did Wife possess an ascertainable claim against Appellants. See Carson, 357 S.W.3d at 292. For this reason, Point One is denied.

## II. Points Two and Three—Equitable Contribution and Unjust Enrichment

In both Points Two and Three, Appellants reason that Wife was unjustly enriched by abandoning the marriage prior to Husband's death and refusing to pay for the Property's upkeep during Husband and Wife's separation. Appellants posit that they therefore are entitled to equitable contribution for the upkeep of the Property for which Wife did not share prior to Husband's death. Wife counters that Appellants lack standing to establish their equitable-contribution and unjust-enrichment claims because Appellants were not Husband's personal representatives and were not injured by Wife's actions. While the particular facts before us suggest that Wife may benefit from the past failings of the parties, because the Appellants lack standing to assert these equitable claims, we may not address the merits of Points Two and Three.

12

A party's standing to bring an action is a justiciability requirement under both federal and Missouri laws. Campbell v. Adecco USA, Inc., 561 S.W.3d 116, 120 (Mo. App. W.D. 2018) (citing Corozzo v. Wal-Mart Stores, Inc., 531 S.W.3d 566, 572 (Mo. App. W.D. 2017)). To prove standing, the moving party must show that he or she has "a personal stake arising from a threatened or actual injury." Corozzo, 531 S.W.3d at 574 (internal quotation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016) (internal quotation omitted). While an actual injury must exist, the injury may be intangible. Id. at 1548–49.

In suits involving property interests, "[i]f the person whose property or interest therein is injured is dead, the action survives and may be brought against the wrongdoer by the person appointed as fiduciary for the estate of the deceased person." Section 537.010.[5] In other words, only the fiduciary for the estate of the deceased person has standing to maintain a suit involving property interests if the injured party is deceased. Id.

Appellants maintain that the following injury occurred to Husband: Wife abandoned the marriage prior to Husband's death and did not pay for the Property's upkeep during their separation. Accordingly, Husband experienced a concrete injury—his loss of money equal to Wife's share of the Property's upkeep. Husband attempted to assign his one-half interest in the Property to Appellants. But as already stated, Husband was unable to legally assign his interest in the Property to Appellants. See Ethridge, 226 S.W.3d at 132 ("A deed by only one of two tenants by the entirety conveys nothing."). Appellants had no interest in the Property either prior to or after Husband's death because Husband's sole interest in the Property was held through a

---

[5] All Statutory references are to RSMo (2016).

13

tenancy by the entirety that reverted the entirety to Wife upon his death. Parciak, 553 S.W.3d at 457; Jennings, 456 S.W.3d at 465–66. Therefore, Appellants lack a legally protected interest in the Property and fail to establish an injury in fact. See Spokeo, Inc., 136 S. Ct. at 1548.

Furthermore, neither Spicer, Pauli, nor any person legally entitled to do so opened an estate for Husband or sought appointment as a personal representative of Husband's estate. See Ellison v. Fry, 437 S.W.3d 762, 772 (Mo. banc 2014); Section 537.010. Appellants assert claims of unjust enrichment and equitable contribution on behalf of Husband. However, because Appellants were never appointed as personal representatives of Husband, or his estate, they have no legal basis to assert claims on Husband's behalf. Ellison, 437 S.W.3d at 772; see also Britton-Page v. Am. Health & Life Ins. Co., 900 S.W.2d 7, 8 (Mo. App. E.D. 1995) (heirs, unless appointed personal representatives, cannot seek relief on behalf of the deceased). Because Appellants did not bring suit as personal representatives of Husband's estate, the circuit court properly found that Appellants lack standing to pursue any causes of action for equitable contribution or unjust enrichment that Husband may have against Wife. See Section 537.010; Ellison, 437 S.W.3d at 772; State ex rel. Cunningham v. Wiggins, 156 S.W.3d 473, 476 (Mo. App. S.D. 2005).[6] Points Two and Three are denied.

## III.  Point Four—Promissory Estoppel

In Point Four, Appellants maintain that the circuit court erred in granting summary judgment on Wife's claim because the evidence within the summary-judgment record does not exclude the defense of promissory estoppel. Specifically, Appellants aver that Wife promised she would consent to Husband's transfer of his one-half interest in the Property to the Trust if

---

[6] Section 537.021.1(1) authorizes us to appoint Appellants plaintiff ad litem. See State ex rel Cunningham, 156 S.W.3d at 476. However, Section 537.021.1(1) is inapplicable here because it only permits such appointment "for the purpose of pursuing a cause of action for lost chance of recovery or survival." Id. Appellants seek neither a cause of action for lost chance of recovery nor a cause of action for survival.

14

Husband remained married to Wife, thereby allowing her to collect Husband's pension benefits upon his death.

> Under the First Restatement, in order to prevail on a claim of promissory estoppel, a party had to establish four elements: "(1) a promise; (2) promisee detrimentally relies on the promise; (3) promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise."

Kearney Com. Bank v. Popejoy, 119 S.W.3d 143, 147 (Mo. App. W.D. 2003) (quoting Halls Ferry Invs., Inc. v. Smith, 985 S.W.2d 848, 853 (Mo. App. E.D. 1998); Chesus v. Watts, 967 S.W.2d 97, 107 (Mo. App. W.D. 1998)). We apply the doctrine of promissory estoppel cautiously and sparingly, "only in extreme cases to avoid unjust results." Id. at 146–47 (internal quotation omitted).

Here, the alleged promise was made between Husband and Wife. Appellants were not parties to the promise at issue. However, "the equitable remedy of promissory estoppel [has been] extended to provide relief to parties other than the original promisee, as long as the four elements are met." Id. at 147 (citing Chesus, 967 S.W.2d at 106). Appellants may assert the theory of promissory estoppel to enforce Wife's promise provided they can establish each of the required elements. Id.

A.    The Promise

"A promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Kearney Com. Bank, 119 S.W.3d at 147 (internal quotations omitted). In other words, "a promise is an expression of intention by the promisor to bring about a specified result in the future." Id. (internal quotation omitted). "[T]he promise must be definite[.]" Id.

Here, Wife allegedly orally promised Husband that if Husband remained married to Wife and allowed his pension benefits to accrue to Wife upon his death, Wife would consent to

15

Husband's transfer of his one-half interest in the Property to the Trust. Appellants, as beneficiaries of the Trust, benefitted from this promise. "[I]f a promise is made to one party for the benefit of another, . . . [e]nforcement of the promise . . . rests on the same basis and depends on the same factors as in cases of reliance by the promisee." Id. Wife maintains that no enforceable promise existed because any agreement concerning real property must have been in writing and have adhered to the requirements of the Statute of Frauds. See Sections 451.220–.240. Even assuming Wife made a valid and enforceable promise, the summary-judgment record is void of any evidence to establish a genuine dispute of fact as to Appellants' detrimental reliance on said promise, thereby defeating their claim of promissory estoppel as a matter of law.

B.    Reliance

"The party asserting promissory estoppel must show that the promisee detrimentally relied on the promise and that the reliance was reasonable." Kearney Com. Bank, 119 S.W.3d at 147 (internal citation omitted).

Critically here, Appellants failed to present any evidence that Appellants relied to their detriment on Wife's promise to Husband. While Appellants presented evidence that Husband relied on Wife's promise by creating the Trust, transferring the Property to the Trust, and not filing for divorce, the summary-judgment record contains no evidence relating to any actions taken by Appellants following said promise. See id. at 148 (noting that a third party may assert promissory estoppel to enforce a promise only if it can be established that the third party relied on the promise).

The Spicer III circuit court properly found that Appellants were required to prove that *they* detrimentally relied on Wife's promise to Husband before relief could be granted. See id. at 147. Because Appellants presented no evidence of any actions taken by *them* in reliance on Wife's oral promise to Husband, the summary-judgment record demonstrates that Appellants are

16

unable to prove at least one element of promissory estoppel. See id. at 148; Clevenger v. Oliver Ins. Agency, Inc., 237 S.W.3d 588, 590, 592 (Mo. banc 2007) (finding that because the respondents failed to prove the fourth element of their promissory-estoppel claim, JNOV was inappropriate); Zipper v. Health Midwest, 978 S.W.2d 398, 412 (Mo. App. W.D. 1998) (affirming the circuit court's grant of summary judgment because the appellant failed to present sufficient evidence of one element of promissory estoppel). Thus, Appellants' point necessarily fails and we need not discuss the remaining elements of promissory estoppel. Point Four is denied.

Conclusion

The judgment of the circuit court is affirmed.

_____

KURT S. ODENWALD,   Presiding Judge

Gary M. Gaertner, Jr., J. and Colleen Dolan, J., concur.

17